


IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

BEAUTICONTROL, INC.,
Plaintiff,
v.
BARBARA BURDITT,
Defendant.

Civil Action No. 3:01-CV-0744-M

## MEMORANDUM OPINION AND ORDER

Before this Court is Defendant's motion to dismiss for lack of personal jurisdiction and improper venue and Defendant's motion to transfer venue, both filed on May 5, 2001. Having considered the motions, this Court is of the opinion that both should be DENIED for the reasons stated below.

## I. Background

Plaintiff BeautiControl, a cosmetics company headquartered in Dallas, Texas, operates its business by marketing products through independent contractors bearing the title of "Consultant." These Consultants buy BeautiControl products from the company at a wholesale rate, and then sell the products to the end-consumer at their retail value. Defendant Barbara Burditt, an Oklahoma resident, acted as a BeautiControl Consultant, and then as a Director of her own unit of Consultants, for over twenty years, finally tendering her resignation to BeautiControl in March 2001. Shortly thereafter, BeautiControl brought this action against Defendant for breach of contract and tortious interference with contract.

Plaintiff's breach of contract claim is predicated upon a nonsolicitation clause contained within two contracts executed between BeautiControl and Defendant during Burditt's tenure as a Director: The original 1983 agreement that made Defendant a Director, and a 1993 contract that

BeautiControl intended as a replacement for the 1983 agreement. Plaintiff alleges that, after Defendant resigned from BeautiControl, she began recruiting other BeautiControl Consultants and Directors to work for one of BeautiControl's competitors, Luxelle International. Thus, Plaintiff contends that Burditt violated the nonsolicitation clause within the 1993 contract, or, if the Court were to find the 1993 agreement invalid, that Defendant breached the same provision within the 1983 contract.

BeautiControl's tortious interference with contract claim also finds its basis in Burditt's solicitation of other BeautiControl Directors and Consultants for Luxelle, as those individuals whom Burditt successfully recruited for Luxelle violated their own BeautiControl contracts, which prohibit the company's sales force from also retailing the products of its competitors.

After removing the case to this Court, Burditt filed a motion to dismiss under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3) for lack of personal jurisdiction and improper venue. Were this Court to deny Defendant's motion, Burditt asks that, in the alternative, it grant her motion to transfer venue to the Northern District of Oklahoma, which she alleges to be the proper venue for this action. The crux of Defendant's motion is three-fold. First, Burditt claims that the forum selection clause contained within the 1993 agreement, which specifies that all matters arising out of the contract shall be litigated in Dallas County, cannot be used as a basis upon which to assert either personal jurisdiction or proper venue because the contract violates the Statute of Frauds and lacks consideration, and because BeautiControl procured Defendant's assent to the agreement through fraud and overreaching. Second, Defendant contends that without the forum selection clause, Plaintiff cannot properly establish (1) personal jurisdiction over Burditt because Defendant has not had the level of contact with the forum state the Due Process Clause requires for assertion of *in personam* jurisdiction, and (2) venue in the Northern District of Texas because the federal venue statute, 28 U.S.C. § 1391, does not provide for it.

## II. Procedure for Determining the Existence of Personal Jurisdiction and Venue

In determining the existence of personal jurisdiction and proper venue, this Court is obligated to consider each cause of action separately. *See, e.g.*, 4 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE 2D § 1069.2 (1994) ("[I]t is important

to remember that a plaintiff . . . must secure jurisdiction over a defendant with respect to each claim she brings."); 15 *id.* § 3808 ("If the plaintiff . . . chooses to sue in the district in which the claim arose . . . it is quite apparent that all of the claims joined must have arisen in the district in which suit is brought."). Thus, this Court's analysis must proceed by independently evaluating the jurisdiction and venue questions as to each of BeautiControl's two claims.

## **III. Plaintiff's Breach of Contract Cause of Action**

### **A. Applicability of the Forum Selection Clause within the 1993 Contract**

Plaintiff argues that the forum selection clause in the 1993 contract waives Defendant's objections to personal jurisdiction and venue in relation to both the breach of contract and tortious interference claims. At the outset, however, this Court finds that the forum selection clause contained within the parties' contract, if valid, only applies to the breach of contract cause of action. Section 17 of the 1993 agreement, which contains the clause, reads:

> This Agreement is made pursuant to, will be construed under, and will be conclusively deemed for all purposes to have been executed and delivered under the laws of the State of Texas. The appropriate state or federal courts located in Dallas County, Texas shall have exclusive jurisdiction over all matters *arising under this Agreement* and will be the proper forums in which to adjudicate such matters.

BeautiControl's breach of contract claim clearly constitutes a matter "arising under" the agreement, as Plaintiff's basis for suit is Defendant's alleged violation of the nonsolicitation provision contained in the 1993 contract. The tortious interference claim, however, does not arise under the parties' contract. In that cause of action, BeautiControl alleges Burditt's interference with *other* BeautiControl employees' contracts by attempting to recruit them to work for BeautiControl's competitor, Luxelle International. The claim is totally unrelated to Burditt's own contract with BeautiControl; thus, the Court cannot hold that Defendant is bound to the forum selection clause in regard to the tortious interference cause of action even if the clause is valid.

**1. Legal Standards Applicable to Forum Selection Clauses**

As the forum selection clause is nevertheless implicated by BeautiControl's breach of contract claim, this Court must determine whether the clause is indeed valid, and, if so, what deference this Court should give to it. In deciding whether to enforce a forum selection clause in a contract between the parties, the Fifth Circuit has dictated that federal courts sitting in diversity must use as their guide federal precedent, not state law. *See Haynsworth v. Corporation*, 121 F.3d 956, 961-62 (5th Cir. 1997). The standards for determining the deference courts should give to forum selection clauses differ depending on whether the movant has asked this Court to dismiss the claim based on lack of jurisdiction or venue, or whether she is instead requesting that the Court transfer a case to a different venue. Because Burditt has moved for dismissal and transfer, this Court must look at both standards.

**2. Defendant's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue**

"Parties can . . . agree in advance that disputes will be litigated in a particular court, and such agreements, if valid, will have the effect of waiving objections to jurisdiction." CHESTER JAMES ANTIEAU & WILLIAM J. RICH, MODERN CONSTITUTIONAL LAW § 34.06 (1997). In *International Software Systems, Inc. v. Amplicon*, 77 F.3d 112, 114-15 (5th Cir. 1996), the Fifth Circuit set forth the standards a court should use to determine whether to enforce a forum selection clause in the face of a motion to dismiss for want of personal jurisdiction and improper venue. The Court explained that such clauses

> "are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances," and . . . courts should enforce such clauses unless the resisting party "could clearly show that enforcement would be unreasonable and unjust, or that the clause would be invalid for such reasons as fraud or overreaching."

*Id.* at 114 (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 9-11 (1972)); *see also Haynsworth*, 121 F.3d at 962 ("In *International Software Sys.*, we held that [*M/S*] *Bremen*'s rules extend to dismissal determinations based on forum selection clauses in diversity cases, a holding

that governs the case at bar." (citation omitted)). Therefore, a party to a contract containing such a clause effectively consents to jurisdiction and venue in the forum enumerated in the clause. *See Am. Airlines v. Rogerson ATS*, 952 F. Supp. 377, 381 (N.D. Tex. 1996).

Defendant attempts to overcome this presumption of enforceability by arguing that the clause is invalid because it violates the Statute of Frauds, lacks consideration, and is the product of fraud and overreaching on the part of BeautiControl. This Court rejects each of these contentions.

**a. Does the 1993 Contract Violate the Statute of Frauds?**

Burditt asserts that the 1993 contract violates the Statute of Frauds because, although it contains Defendant's signature, no BeautiControl representative signed it. Defendant contends that where a contract cannot be fully performed within one year of its execution, both parties must have signed the agreement for it to be enforceable under the Texas Statute of Frauds. Both Texas statutory and case law prove this proposition erroneous. First, the Texas Business and Commerce Code provides that a contract which cannot be performed within one year satisfies the Statute of Frauds if it is "in writing" and "signed by the person to be charged with the promise or agreement." TEX. BUS. & COM. CODE ANN. § 26.01(a) (Vernon 1997). Under section 26.01(a), the person to be charged with the agreement here is Burditt. Interpretation of this statute by Texas appellate courts confirms that only the defendant to an action upon the contract need have signed the contract to effect its enforceability against that individual. *See, e.g., Lewis v. Adams*, 979 S.W.2d 831, 834 (Tex. App.–Houston [14th Dist.] 1998, no pet.) ("The statute requires an agreement to be in writing and signed by the party to be charged."). Thus, the contract satisfies the Statute of Frauds and therefore this Court may allow enforcement of the forum selection clause against Burditt if the Court finds the clause otherwise valid.

**b. Is the Clause Invalid for Lack of Consideration?**

Burditt also argues that the 1993 agreement was but a modification of the 1983 contract, and as a modification, the 1993 agreement must have new consideration separate and apart from that of the 1983 contract to be valid. *See, e.g., Hovas v. O'Brien*, 654 S.W.2d 801, 803 (Tex.

App.–Houston [14th Dist.] 1983, no writ). Defendant argues that the 1993 agreement does not contain any consideration different from that within the earlier contract; therefore, the 1993 agreement is an invalid modification. In addressing Burditt's contentions, this Court first concludes that the 1993 contract does not appear to be a modification of the earlier agreement, but instead seems to be intended by both parties as a replacement for the old contract, which could be cancelled by either party at will. As a substitute for the old agreement, instead of a modification, the 1993 contract need not have had any consideration different from that contained within the older agreement, which both parties repudiated by implication when they entered into the new contract. Even if this Court does assume, however, that the 1993 contract was but a modification of the earlier one, it still finds that the 1993 agreement contained provisions constituting sufficient new consideration to be valid. For instance, the 1993 document includes an alteration in the manner in which monthly bonuses would be awarded to Directors, by including a formula upon which the monthly bonuses would be based. Second, the noncompetition clause in the 1983 contract is not in the 1993 contract. These two things together are benefits to Burditt that she did not receive under the earlier contract, and thereby constitute consideration rendering the 1993 contract, including the forum selection clause, enforceable even were this Court to consider the 1993 agreement a modification of the earlier contract.

### c. Is the Clause Invalid Because of BeautiControl's alleged Fraud or Overreaching?

Finally, Defendant contends that this Court cannot enforce the 1993 agreement because BeautiControl procured Burditt's consent to the contract through fraud and overreaching. A court may refuse to enforce a forum selection clause only if the party opposing enforcement of the clause proves that it "'results from fraud or overreaching, [or] that it violates a strong public policy.'" *Afram Carriers v. Moeykens*, 145 F.3d 298, 301 (5th Cir. 1998) (quoting *Mitsui & Co. (USA) v. MIRA M/V*, 111 F.3d 33, 35 (5th Cir. 1997)). The Fifth Circuit has cautioned that "[a]llegations that the entire contract was procured as the result of fraud or overreaching are 'inapposite to our [forum selection clause] enforceability determination.'" *Id.* (quoting

*Haynsworth*, 121 F.3d at 964).

Defendant asserts that BeautiControl representatives "forced" her to sign the 1993 contract, claiming that BeautiControl management gave her no notice that she would be asked to sign a new contract before she received the agreement at a BeautiControl representatives' meeting in January 1993, and that she felt pressured to sign the contract because BeautiControl representatives publicly ridiculed another Director who refused to execute the agreement by "announc[ing] over a microphone and loud speaker to all of the independent contractors present that this one individual" protested. Additionally, Burditt contends that she, along with the others present at the meeting, was not "allowed a sufficient amount of time to review the contract, to have an attorney review the contract, to ask questions about the meaning of the contract, or to, generally, [sic] reflect upon any reasons for entering into this contract."

This argument fails, however, because Burditt has shown no fraud or overreaching in relation to the forum selection clause specifically; she only alleges that BeautiControl procured execution of the contract in its entirety by such means. As the *Haynsworth* Court explained, a plaintiff's claims of fraud or overreaching[1] "in aspects of the General Undertaking other than the [forum selection] clause . . . are irrelevant to enforceability." *Haynsworth*, 121 F.3d at 963. In *Haynsworth*, the Fifth Circuit held a forum selection clause to be enforceable against the defendants, members of the plaintiff underwriting organization, despite the defendants' claims that the plaintiff "disclosed critical risks [of the agreement] only after the plaintiffs had been induced into signing the General Undertaking," and that the plaintiff "conditioned [the defendants'] continued membership on signing the version of the General Undertaking that contained the [forum selection] clause." *Id.* at 964. The Fifth Circuit quickly dismissed these arguments, explaining that "[w]hile these allegations, if proved, might very well be relevant to the merits of the claims in the absence of a forum selection clause, they are wholly inapposite to our enforceability determination, which must of course precede any analysis of the merits." *Id.*

---

[1]The Fifth Circuit has adopted the definition of "overreaching" found in *Black's Law Dictionary*. "'Overreaching' is 'that which results from an inequality of bargaining power or other circumstances in which there is an absence of meaningful choice on the part of one of the parties.'" *Haynsworth*, 121 F.3d at 965 n.17 (quoting BLACK'S LAW DICTIONARY 1104 (6th ed. 1990)).

Similarly, Burditt's allegations of fraud and overreaching solely go to the merits of the 1993 contract as a whole–not to the forum selection clause specifically. Thus, this Court rejects Defendant's argument that fraud or overreaching renders the clause unenforceable.

### 3. Defendant's Motion to Transfer Due to Improper Venue

This Court must now determine what deference to give the forum selection clause in the context of Defendant's motion to transfer venue. This circuit has chosen to apply different rules in deciding whether to transfer a case relating to a contract in which a forum selection clause exists. *Id.* In *International Software Systems*, the Fifth Circuit stated, "[a]lthough we would prefer to apply [the same test] in diversity cases to motions to dismiss and motions to transfer" where one party relies on a forum selection clause, different considerations apply to the two situations. *Id.* In a motion to transfer, 28 U.S.C. § 1404 and § 1406 set out the factors a court should take into account in deciding whether to transfer a case; in a motion to dismiss due to improper venue, however, "there is no [such] federal rule directly on point." *Id.* (internal quotation marks omitted).[2] Thus, in considering a defendant's motion to transfer, courts in this circuit should use an "interest of justice" balancing test based on § 1404 and § 1406 in which the forum selection clause is only one consideration among many, whereas with a motion to dismiss, a court should presume that the clause is valid unless a defendant proves fraud or overreaching in relation to the clause itself. *Id.*

The exact contours of the balancing test a court must apply in considering Defendant's motion to transfer is set forth in *Stewart Organization v. Ricoh Corp.*, 487 U.S. 22 (1988). In that case, the defendant moved to dismiss because of improper venue or, in the alternative, to transfer venue to the district provided for in the parties' forum selection clause. *Id.* at 24. In relation to the motion to transfer, the Supreme Court determined that 28 U.S.C. § 1404(a) "governed the parties' venue dispute." *Id.* at 28. It continued,

---

[2]Section 1406(a) states that, "in the interest of justice," a court may transfer, rather than dismiss, a case that the plaintiff has filed in an improper venue. 28 U.S.C.A. § 1406 (West 2001). Section 1404 provides, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C.A. § 1404 (West 2001).

> Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an "individualized, case-by-case consideration of convenience and fairness." A motion to transfer under § 1404(a) thus calls on the district court to weigh in the balance a number of case-specific factors. The presence of a forum-selection clause such as the parties entered into in this case will be a significant factor that figures centrally in the district court's calculus.

*Id.* at 29 (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). Among the factors a court should look at are the convenience of the forum "given the parties' expressed preference" for a specific forum as indicated in the forum selection clause, "and the fairness of transfer in light of the forum-selection clause and the parties' relative bargaining power." *Id.* at 29. In addition, a court must "weigh in the balance the convenience of the witnesses and those public-interest factors of systemic integrity and fairness that, in addition to private concerns, come under the heading of 'the interest of justice.'" *Id.* at 30.

After considering these factors in light of Defendant Burditt's motion to transfer, this Court finds that it should not transfer the breach of contract claim to the Northern District of Oklahoma. First, the "parties' expressed preference," as indicated in the 1993 contract, was to adjudicate disputes arising under the contract in Dallas County. Although a difference in bargaining power between the two parties might have existed, it was not so extreme as to require this Court to refuse to enforce the forum selection clause. The parties had a course of dealing that went back 10 years; Burditt had moved up in the company from a Consultant to a Director, and was in charge of a Unit of her own. Therefore, this Court regards her as a relatively sophisticated party to the negotiations. Second, the convenience of the witnesses would be served virtually equally by venue in this District or in the Northern District of Oklahoma, as persons from both areas will apparently be testifying in the matter–executives of BeautiControl, who live here, and contractors Burditt allegedly sought to recruit, who reside in Oklahoma. Additionally, Burditt has provided the Court with no reason why "systemic integrity and fairness" would be better served by a transfer to the Northern District of Oklahoma.

## <u>B. Personal Jurisdiction Analysis Absent the Forum Selection Clause</u>

Even apart from any reference to the forum selection clause, Plaintiff has established that

this Court has *in personam* jurisdiction over Defendant for the breach of contract claim. In a diversity suit, "the law of the forum state, subject to the constitutional limits imposed by the Due Process Clause, controls the ability of a district court to exercise personal jurisdiction over nonresident defendants." *Harper Macleod Solicitors v. Keaty & Keaty*, 2001 WL 849341, at *5 (5th Cir. July 26, 2001). In Texas, the long-arm statute, TEX. CIV. PRAC. & REM. CODE ANN. §§ 17.041-.042 (Vernon 1997), provides statutory bases for the exercise of personal jurisdiction over such parties. Thus, the Court must explore whether Burditt falls under the Texas long-arm statute and, if so, whether the requirements of Due Process permit the Court to exercise jurisdiction over her. In conducting this inquiry, the Court recognizes that, "when a court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, it must accept as true the uncontroverted allegations in the complaint and resolve in favor of the plaintiff any factual conflicts posed by the affidavits." *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999). A plaintiff may satisfy its burden simply by "presenting a prima facie case for personal jurisdiction." *Id.*

**1. Texas Long-Arm Statute**

The Texas long-arm statute allows state courts to exercise personal jurisdiction over nonresidents doing business within the state. Section 17.042 contains a nonexhaustive list of examples of actions by defendants that constitute "doing business." Of the types of actions included on the list, Defendant Burditt clearly falls into one, section 17.042(1), which states: "[A] nonresident does business in this state if the nonresident (1) contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state." § 17.042(1). BeautiControl is a Texas resident, with its principal place of business in Dallas County. Burditt executed two contracts with BeautiControl, and those contracts form the basis of Plaintiff's breach of contract claim. Thus, as to that claim, this Court has personal jurisdiction over Defendant if the assertion of jurisdiction also satisfies the demands of due process. Even if the cause of action did not fall within one of the specifically enumerated categories of § 17.042, however, the "broad language of the long-arm statute's 'doing business' requirement permits the statute to reach as far as the federal constitutional requirements of due process will allow." *Guardian Royal Exchange Assur., Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 226 (Tex. 1991). In consequence, to determine whether a defendant's acts constitute "doing business" in Texas so that assertion of jurisdiction over the party complies with the dictates of the long-arm statute, a court need only consider whether jurisdiction is proper according to

"federal constitutional requirements of due process." *Id.*

### 2. Due Process

Under the Due Process Clause, a court may not force a defendant to appear within its jurisdiction unless the defendant has established a sufficient connection with the forum state. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945). The Fifth Circuit, in *Latshaw v. Johnson*, 267 F.3d 208, 211 (5th Cir. 1999), succinctly summarized the applicable Supreme Court standards on the subject of personal jurisdiction as follows:

> The Due Process Clause of the Fourteenth Amendment permits the exercise of personal jurisdiction over a nonresident defendant when (1) that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing "minimum contacts" with the forum state; and (2) the exercise of jurisdiction over that defendant does not offend "traditional notions of fair play and substantial justice." To comport with due process, the defendant's conduct in connection with the forum state must be such that he "should reasonably anticipate being haled into court" in the forum state.

*Id.* (citations omitted). The specific minimum contacts test a court should apply depends on whether a plaintiff is asserting that the cause of action arises from the defendant's actions in connection with the state, or whether, alternatively, the plaintiff alleges that, in general, the defendant has had continuous and systematic contacts with the state sufficient to allow a court to assert jurisdiction over the party in the particular case. *See* CHESTER JAMES ANTIEAU & WILLIAM J. RICH, MODERN CONSTITUTIONAL LAW (2d ed. 1997) (explaining that if "the activity or event which triggered the litigation was also related to the claim for jurisdiction in the forum state . . . the [plaintiff] seeks 'specific jurisdiction.'" But "[w]hen there is no specific relationship between the cause of action and the forum state, plaintiffs may still seek the general jurisdiction of the courts").

BeautiControl's Amended Complaint alleges only specific jurisdiction. In a breach of contract claim in which the plaintiff alleges specific jurisdiction over a nonresident party to the contract, a court must look to the parties' "prior negotiations and [the contract's] contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Latshaw*, 167 F.3d at 211 (internal quotation marks omitted). Merely "entering into a

contract with [the] out-of-state party, without more, is not sufficient to establish minimum contacts." *Id.* In *Latshaw*, the plaintiff, a Texas resident, had formed an oral contract that created a partnership/joint venture with the defendant, a resident of Louisiana. *Id.* at 208. In accordance with the agreement, the plaintiff "searched for drilling rigs to buy," assuming all costs associated with the search, while the defendant paid for the purchase of the rigs themselves. *Id.* at 209-10. The partners then resold the rigs, the revenue from the sale being used to reimburse the defendant, with interest, and the remaining profits going to the plaintiff. *Id.* After the defendant allegedly refused to pay the plaintiff his portion of the profits from a specific sale, the plaintiff filed suit for breach of the oral partnership/joint venture contract.

In his attempt to establish specific jurisdiction, the plaintiff alleged that, in the course of the business relationship, the defendant made twenty-six trips to Texas to inspect or buy rigs or for related purposes during the seven-year length of their business relationship, and that the defendant called the plaintiff at least thirty-seven times with respect to their business. *Id.* at 212. The Fifth Circuit found these allegations persuasive, reversing the district court's dismissal of the suit for lack of specific jurisdiction. *Id.* at 213. In its reasoning, the court explained that, according to the plaintiff's contentions, the defendant "entered into an ongoing business relationship with a Texas resident . . . and made multiple trips and phone calls to Texas in furtherance of that relationship," thus "purposefully avail[ing] himself of the benefits and protections of doing business in Texas and could reasonably foresee being haled into court here." *Id.*

*Latshaw* bears sufficient similarity to the case at hand to warrant resolution of the issue of specific jurisdiction in the same way. According to Plaintiffs's uncontroverted allegations, Burditt and BeautiControl began their contractual business relationship in 1983, when Burditt became a Director for the company. The Complaint continues,

> During the course of performance under the 1983 Agreement, Burditt made frequent trips to the Northern District of Texas from her home in Oklahoma to attend BeautiControl sales events, meetings, and promotions. In addition, Burditt frequently ordered products from BeautiControl by submitting purchase orders to BeautiControl in the Northern District of Texas. The products were shipped from BeautiControl's facilities in the Northern District of Texas. Burditt also received commission and other bonus payments from BeautiControl's offices in the Northern District of Texas.

These contentions suffice to show an ongoing contractual relationship in which Defendant made many forms of contact with BeautiControl in Texas, most notably by taking "frequent trips" to Dallas for business-related functions. This Court also finds significant that, in her actions related to this lawsuit, Defendant has attempted to procure the protections of Texas law: On May 30, 2001, Burditt filed an Amended Complaint against BeautiControl in the Northern District of Oklahoma, alleging, *inter alia*, that BeautiControl violated the Texas Deceptive Trade Practices Act. The Amended Complaint includes the heading, "Count II: Violation of the Texas Deceptive Trade Practices Act," and reads as follows:

> BeautiControl has violated the DTPA on numerous occasions. Such violations include, but are not limited to, the misuse of Ms. Burditt's name and image to promote BeautiControl products, the advertisement that Ms. Burditt affiliates with and sponsors BeautiControl, and the disparagement of products other than BeautiControl's which Ms. Burditt markets. Additionally, BeautiControl misrepresented the nature and contents of the 1992 Contract to Ms. Burditt.

Thus, BeautiControl's allegations, when taken as true, reveal not only that Burditt had a continuing contractual relationship with Plaintiff that necessitated frequent contact with its offices in Dallas, as well as frequent trips to the forum state in furtherance of the relationship, but also that Burditt specifically sought the protections of Texas law in litigation related to the parties' contractual relationship. In consideration of these factors, this Court finds that BeautiControl has presented a *prima facie* case for specific jurisdiction over Defendant for the breach of contract claim.

### **C. Venue Analysis Absent the Forum Selection Clause**

This Court also finds that proper venue exists in this District for the breach of contract claim ignoring the forum selection clause in the 1993 agreement, as substantially all of the events giving rise to the claim occurred in this District. "When an objection to venue has been raised, it is the Plaintiff's burden to establish that venue is proper in the judicial district in which the action has been brought." *Advanced Dynamics Corp. v. Mitech Corp.*, 729 F. Supp. 519, 519 (N.D. Tex. 1990). The Court remains cognizant that "[i]t is, of course, possible in a given case that there could be more than one district in which a 'substantial part of the events . . . giving rise

to a claim occurred.'" *Seariver Maritime Fin. Holdings v. Pena*, 952 F. Supp. 455, 458 (S.D. Tex. 1996). Thus, "there could be more than one proper venue for a certain cause of action. A court is not obliged to determine the 'best' venue for a cause of action pending before it, but rather must determine only whether or not its venue is proper." *Id.* at 458-59.

Two lines of reasoning emerge in the case law in regard to how a court should determine whether proper venue lies in a particular district in a breach of contract action. The first set of cases, cited by BeautiControl, holds that "[w]here . . . a contract forms the basis of the plaintiff's claims, 'courts consider a number of factors, including where the contract was negotiated or executed, where it was to be performed, and where the alleged breach occurred.'" *ESI v. Coastal Power Prod. Co.*, 995 F. Supp. 419, 424 (S.D.N.Y. 1998) (quoting *PI v. Quality Prods.*, 907 F. Supp. 752, 757-58 (S.D.N.Y. 1995)). The *ESI* court additionally reasoned that "[v]enue may be proper in the district where the contract was substantially negotiated, drafted, and/or executed, even if the contract was not to be performed in that district and the alleged breach occurred elsewhere." *Id.* at 425. In contrast, the other line of cases holds that a district has venue over a breach of contract claim as long as the parties were to perform the contract there. *See, e.g.*, *Am. Carpet Mills v. Gunny Corp.*, 649 F.2d 1056, 1059 (5th Cir. Unit B 1981); *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 842 (9th Cir. 1986). The latter line of cases came down before Congress amended the venue statute in 1990 to allow for multiple places of venue; thus, these cases only allow for venue in one district–the place of performance of the contract–whereas the more modern New York cases, decided after the venue statute was amended to allow for more than one proper venue, provide for a multifactored analysis in determining whether the district in question may have proper venue.

Although one Texas district court has followed the reasoning of *American Carpet Mills* after the venue statute amendment, *see Igloo Prod. Corp. v. Mounties*, 735 F. Supp. 214, 218 (S.D. Tex. 1990), this Court finds that the New York district court cases present a more appropriate analysis of determining proper venue in light of the venue statute amendment and should thus be applied. Under either standard, however, proper venue vests in this District in regard to BeautiControl's breach of contract claim. Applying the *ESI* factors, which require the Court to determine where the parties negotiated and executed the agreement and were to perform the agreement, as well as where the breach occurred, the Court finds that the Northern District of

Texas is the proper venue. The contract which forms the basis of the claim was negotiated and executed here. BeautiControl performed its part of the agreement here. Additionally, Burditt performed part of her contractual obligations in this District by communicating with BeautiControl at its Dallas headquarters and by making frequent business-related trips here. Although the breach occurred in Oklahoma, these alleged facts are enough to satisfy BeautiControl's burden of establishing venue in this District under *ESI*. *Cf. U.S. Surgical Corp. v. Imagyn Med. Tech.*, 25 F. Supp. 2d 40, 45 (D. Conn. 1998) (holding in a case almost identical to the one at hand that, "[w]hile this contract was to be performed [by the employee] in California, [the employee] negotiated and executed the contract in Connecticut, where [the plaintiff's] principal place of business is located. Also, in connection with this contract, [the employee] attended a six-week training class and sporadic sales strategy meetings in Connecticut. Thus, venue is proper in Connecticut").

Were the Court to choose instead to apply *American Carpet Mills*, it would look solely at where the contract was performed. As previously stated, it was partly performed in Dallas–BeautiControl was to perform most, if not all, of its share of the duties under the contract here, and Burditt also performed many acts related to her contractual responsibilities in this District. Thus, under either standard, § 1391(2) renders venue in this District proper.

## IV. Plaintiff's Tortious Interference with Contract Cause of Action

### A. Personal Jurisdiction

This Court's jurisdictional analysis must follow a different course in relation to the tortious interference with contract claim. This cause of action has nothing to do with the parties' contractual relationship; its sole concern is Burditt's interference with the contractual relationship BeautiControl maintained with other Consultants and Directors whom, Plaintiff alleges, Burditt attempted to recruit for Luxelle International after she resigned from BeautiControl. Thus, this Court cannot find specific jurisdiction based on Burditt's communications with BeautiControl and trips to Dallas as a Director for the company, as these contacts do not relate to Burditt's alleged tortious interference with other BeautiControl salespersons' contracts, which Defendant apparently carried out solely in Oklahoma. *See, e.g.*,

*Bell Helicopter Textron v. C & C Helicopter Sales*, No. 3:00-CV-1516-X, 2001 WL 290569, at *2 (N.D. Tex. Mar. 21, 2001) (Kendall, J.) ("An identified contact will not support specific jurisdiction if it in no way relates 'to the merits' of the plaintiff's cause of action.").

The only allegation lodged by BeautiControl that this Court can use in determining whether it has specific jurisdiction over Defendant is its statement that "BeautiControl's economic injury resulting from Burditt's [activities] will be suffered in Dallas, where it is headquartered." This statement requires the Court to use the "effects" test, which the Fifth Circuit has previously applied in deciding whether a court has jurisdiction over a tort claim that arises from an act committed out-of-state by a nonresident defendant that causes in-state effects. *See, e.g.*, *Wien Air Alaska v. Brandt*, 195 F.3d 208, 211 (5th Cir. 1999) ("[A] single act by [a defendant] directed toward Texas that gives rise to a cause of action [by a Texas resident] can support a finding of minimum contacts."). As the Fifth Circuit has explained,

> [w]hen a nonresident defendant commits . . . an act outside the state that causes tortious injury within the state, that tortious conduct amounts to sufficient minimum contacts with the state by the defendant to constitutionally permit courts within that state, including federal courts, to exercise personal adjudicative jurisdiction over the tortfeasor and the causes of action arising from its offenses . . . . Even an act done outside the state that has consequences or effects within the state will suffice as a basis for jurisdiction in a suit arising from those consequences if the effects are seriously harmful and were intended or highly likely to follow from the nonresident defendant's conduct.

*Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 628 (5th Cir. 1999); *see also* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 37 (1988) ("A state has power to exercise judicial jurisdiction over an individual who causes effects in the state by an act done elsewhere with respect to any claim arising from these effects unless the nature of the effects and of the individual's relationship to the state make the exercise of such jurisdiction unreasonable.").

The effects test originated in *Calder v. Jones*, 465 U.S. 783 (1983), in which the Supreme Court held that a California court could assert personal jurisdiction over the defendant in a libel case because the nonresident defendants' "intentional conduct in [their home state was] calculated to cause injury to respondent in California." *Id.* at 791. The defendants, a reporter and an editor for the *National Enquirer*, had collaborated on an allegedly libelous story about the plaintiff that the periodical subsequently published nationwide, including in California. *See id.* at 784. The Court found that the "plaintiff [was] the focus of the activities of the

defendants . . . . and the brunt of the harm, in terms of both respondent's emotional distress and the injury to her professional reputation, was suffered in California." *Id.* at 788-89. Therefore, the Court concluded, the defendants must have "'reasonably anticipate[d] being haled into court there' to answer for the truth of the statements made in their article." *Id.* at 790 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

Although, in the abstract, the effects test seems clear, application of this test by the Fifth Circuit and the Northern District of Texas has made any determination of personal jurisdiction utilizing the standard difficult. For example, in *Bell Helicopter v. C & C Helicopter Sales*, the Court refused to find that personal jurisdiction existed over the defendants when the plaintiff's only basis for jurisdiction consisted of the contention that the effects of the defendants' tort were felt by the plaintiff in Texas. *See* 2001 WL 290569, at *4. The plaintiff alleged that the defendants improperly mixed and matched various Bell helicopter parts outside of the state and falsely represented to the out-of-state buyer that Bell manufactured the helicopter. *See id.* at *1-*2. The effects of these wrongs, Bell contended, were felt by the plaintiff in Texas, thereby grounding personal jurisdiction over the defendants in Texas courts. *See id.* at *3. The Court rejected the plaintiff's argument, however, finding that the defendants had not purposefully directed the tort toward the forum state. *See id.* at *4. Conversely, in *Guidry v. U.S. Tobacco Co.*, 188 F.3d 619 (5th Cir. 1999), the Fifth Circuit held the effects test to be satisfied when it found the defendants, out-of-state tobacco associations, to have intentionally directed misrepresentations to residents of Louisiana, the forum state. In these cases, the key appears to be whether the defendant purposefully aimed his tortious activity at the state in question. In conducting such an inquiry, the court "must examine the relationship among the defendant, the forum, and the litigation." *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1171 (5th Cir. 1985).

This Court finds *Southmark Corp v. Life Investors*, 851 F.2d 763 (5th Cir. 1988) instructive on this question. In *Southmark*, the court found that the district court lacked personal jurisdiction over a nonresident defendant accused of tortious interference. *Id.* at 772. The case concerned an alleged contract negotiated between Life Investors, one of the named defendants, and the plaintiff, Southmark, a Texas corporation, for the sale of stock. *Id.* at 765. After the purported execution of the contract, Life Investors began discussions with USLICO, another defendant which had its headquarters in Virginia. *See id.* These negotiations resulting in a written agreement in which Life Investors agreed to sell the shares to USLICO. *See id.* As a result, Southmark filed suit against Life Investors for breach of contract and against USLICO for tortious interference with contract. USLICO filed a motion to dismiss in the Texas federal district court for lack of personal jurisdiction. The district court held that it did not have

personal jurisdiction over USLICO, and Southmark appealed. *See id.* at 766.

In determining whether USLICO "aimed its allegedly tortious activities at Texas," the Fifth Circuit looked at the following factors: (1) where the agreement allegedly interfered with was negotiated, (2) whether "the agreement was made or to be performed in Texas or governed by Texas law," and (3) whether the other party to the agreement (aside from the plaintiff) was a Texas resident. *Id.* at 772. The Court found that the agreement was negotiated in Atlanta and New York, that no part of the agreement was to be performed in Texas or governed by Texas law, and that the other party to the agreement was not a Texas resident. *Id.* at 772-73. Therefore, it found that USLICO had not directed its actions toward Texas. *Id.* at 773.

In applying these factors to *BeautiControl*, however, this Court reaches a different result. Although not perfectly clear from Plaintiff's pleadings and information submitted with its response to the motion to dismiss, it seems that at least some of the agreements allegedly interfered with were made in Texas at meetings such as the one at which Burditt signed her contract. Additionally, BeautiControl performed its part of these independent contractor agreements in Texas. Although the salespeople with whose contracts Burditt allegedly interfered were Oklahoma residents, the first two considerations lead this Court to find that Burditt purposefully aimed the tortious activities at the forum state, especially when taken in light of the fact that Burditt and BeautiControl had established a long business relationship which put Burditt on full notice that any recruitment of BeautiControl salespersons would effect harm within Texas. Therefore, this Court concludes that it can assert specific jurisdiction over Burditt for the tortious inference claim.

## <u>B.</u> <u>Venue</u>

Unfortunately, the law relating to proper venue in a tortious interference with contract claim is substantially more undeveloped than that relating to the breach of contract cause of action. Still, case law suggests that proper venue cannot be sustained in this District with regard to BeautiControl's tortious interference claim, as all of the offenses BeautiControl alleges Burditt committed in relation to this cause of action occurred in the Northern District of Oklahoma, or at least within the state of Oklahoma itself. It is useful to note, for purposes of this analysis, that BeautiControl's case against Burditt is closely analogous to a recent District of Connecticut tortious interference case in which the court granted a defendant's motion to transfer venue. *See U.S. Surgical Corp. v. Imagyn Med. Tech.*, 25 F. Supp. 2d 40, 43 (D. Conn. 1998). In *U.S. Surgical Corp.*, the court considered whether, in a tortious interference with contract claim lodged by a Connecticut company against a California business, proper venue existed in

Connecticut. The plaintiff, U.S. Surgical, alleged that the defendant, Imagyn, had hired away one of its employees who had been working in California, "despite [Imagyn's] knowledge and familiarity with [U.S. Surgical's] standard employment agreement," which prohibited the employee from performing salesperson services in direct competition with U.S. Surgical. *Id.* at 42-43. The alleged tortious interference occurred solely in California. The only connection to Connecticut was that the employee and U.S. Surgical had negotiated the original employee contract in the state. *Id.* at 43. The court rejected the plaintiff's assertion that venue over Imagyn was proper in Connecticut, explaining that the fact that the employment contract originated in the district "certainly does not amount to the substantial connection necessary to establish proper venue." *Id.*

Similarly, BeautiControl's allegations in relation to its tortious interference claim do not connect Burditt to the Northern District of Texas, except inasmuch as the salespersons Burditt sought to recruit had negotiated and executed their contracts in Dallas. Although BeautiControl's pleadings and other filings are silent as to where these independent contractors' agreements were negotiated and executed, even if this Court did infer that, like Burditt, these other individuals signed their agreements in Dallas, this is an insufficient basis for a finding that venue is proper here.

The Court must now determine whether it should dismiss the tortious interference claim on account of improper venue, or instead sever the claims and transfer the tortious inference cause of action to a district of proper venue under 28 U.S.C. § 1406(a). The Court finds the latter option to be the most expeditious method of resolving the problem of improper venue, as dismissing the claim altogether would result in unnecessary replication by forcing Plaintiff to refile in the Northern District of Oklahoma, where venue is obviously proper. The Supreme Court explained that § 1406(a)

> is thus in accord with the general purpose which has prompted many of the procedural changes of the past few years--that of removing whatever obstacles may impede an expeditious and orderly adjudication of cases and controversies on their merits. . . . If by reason of the uncertainties of proper venue [the plaintiff files the case in the wrong district], Congress, by the enactment of § 1406(a), recognized that "the interest of justice" may require that the complaint not be dismissed but rather that it be transferred in order that the plaintiff not be penalized by what the late Judge Parker aptly characterized as "time-consuming and justice-defeating technicalities."

*Goldlawr v. Heiman*, 369 U.S. 463, 466-67 (1962). Following this reasoning, the Court orders severance of the claims and transfer of the tortious interference cause of action to the Northern District of Oklahoma, where Defendant resides and where all or substantially all of the alleged

offenses occurred.

SO ORDERED.

DATED: September 26, 2001.

BARBARA M.G. LYNN
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF TEXAS